UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                    **DECISION AND ORDER**

JARON RUTH,                                           1:18-CR-00004 EAW

                    Defendant.

_____

On August 22, 2018, United States Magistrate Judge Jeremiah J. McCarthy signed a protective order with respect to the early disclosure of material covered by 18 U.S.C. § 3500. (Dkt. 34). Subsequent to the entry of that protective order, on January 15, 2019, defendant Jaron Ruth ("Defendant") entered into a plea agreement with the Government and pleaded guilty to Counts 1 and 4 of the Indictment, charging a violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and distribute, 28 grams or more of cocaine base, a quantity of cocaine, and a quantity of marijuana) and a violation of 18 U.S.C. § 924(c)(1)(A)(i) (possession of firearms in furtherance of drug trafficking crimes). (Dkt. 56). It was specifically contemplated by the plea agreement that the Court would need to make factual findings concerning Defendant's alleged involvement in the murder of Henry Ackley—the Government contends that this murder should be considered in connection with Defendant's sentencing whereas Defendant denies any involvement in the murder. (*Id*. at ¶¶ 4(e), 9(a), 9(b)). An evidentiary hearing to resolve that issue has been scheduled to commence on August 17, 2020. (Dkt. 111).

- 1 -

On February 15, 2020, Defendant filed a motion to vacate the protective order previously issued by Judge McCarthy. (Dkt. 91). On February 25, 2020, the Government filed a motion for a protective order and for return of 3500 material upon conclusion of the sentencing hearing. (Dkt. 93).[1] On that same date, the Government filed a memorandum in opposition to Defendant's motion to vacate the protective order, arguing that while it was not aware of any witness intimidation or threats, the potential existed, citing the nature of the allegations against Defendant (involving an alleged murder), his prior criminal history involving an incident where he allegedly shot his girlfriend in the neck while she was holding their infant son, Defendant's alleged association with the Bailey Boys gang, and the vulnerability of one of the Government's witnesses who is incarcerated. (Dkt. 94 at 15-16). The Government stated its position that it would only agree to the disclosure of witness names 48 hours in advance of their testimony, although it expressed a willingness to continue negotiations with defense counsel. (*Id*. at 16). Defendant filed a memorandum in opposition to the Government's motion and in further support of his motion. (Dkt. 99). Defendant stated his position that the Court could distinguish between 3500 material related to non-law enforcement witnesses and other less sensitive material:

> The Court can impose a protective order that allows counsel to review items that actually are 3500 material from non-law enforcement witnesses with Mr. Ruth, in the presence of defense counsel and/or his staff (i.e., he can review and read them), without the items being retained in the jail setting.

(*Id*. at 5).

---

[1]    The Government's motion was supported by an affidavit that it originally sought to file under seal, but it subsequently agreed it should be filed on the public docket. (Dkt. 115).

Since the filing of those motions, the parties have been working to negotiate a mutually acceptable protective order, and they have almost reached an agreement. Two areas of disagreement remain: (1) Defendant's counsel seeks to share the information covered by the protective order with "defense investigators"; and (2) Defendant seeks to be able to review the "civilian witness materials" covered by the protective order in an unsupervised manner "in a secure, private setting/room, with no ability to remove anything from that room, at the Cattaraugus County Jail." (Dkt. 114). The Government objects to both proposals.

With respect to sharing information with defense investigators, as long as any such individual agrees, as proposed by Defendant's counsel, to "abide strictly by the terms of the Court's order," (*id*. at 1), then the Court views this as a reasonable allowance given the circumstances of this particular case. The Court is hard-pressed to conclude that there should be a distinction between a paralegal or other staff member (who is allowed access to the material) and a defense investigator. An investigator can play a critical role as part of a defense team, and to unnecessarily restrict his or her access to the information covered by the protective order is not reasonable under the circumstances. However, especially because an investigator is likely to be an independent contractor not employed by Defendant's counsel's law firm, the Court will require that Defendant's counsel arrange for any such investigator who is provided information covered by the protective order, to execute in advance a declaration acknowledging that he/she understands the terms of the protective order and agrees to abide by its terms. Any such declaration must be maintained by Defendant's counsel.

With respect to the second issue, Defendant argues it would be unduly burdensome to require Defendant's counsel or his staff to have to sit with Defendant while he reviews the information covered by the protective order, and there are additional challenges in light of the COVID-19 pandemic in having to transport Defendant to the United States Courthouse in Buffalo, where the protective order allows for his unsupervised review of the materials. (Dkt. 114 at 2). The Court is not persuaded by this argument. The parties and the Court lack sufficient control over the security of any material that is left with the jail. Moreover, it is not reasonable to expect staff at the local jail facility where Defendant is housed to monitor Defendant's compliance with the protective order and ensure that he does not keep or duplicate any of the materials. That is a burden appropriately placed on Defendant's counsel (and Defendant) pursuant to the terms of the protective order. The protective order only contains restrictions on Defendant's unsupervised review of "civilian witness materials" in a jail setting. In other words, Defendant is not restricted from an unsupervised review of 3500 material in a jail setting where the material does not pertain to civilian witnesses. To facilitate the effective and efficient management of the evidentiary hearing, and allow time for Defendant to prepare, the Government has appropriately agreed to release these materials earlier than otherwise required by law. *See United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). However, reasonable restrictions on Defendant's access to the materials in a jail setting are also appropriate. As then District Judge Gerard E. Lynch explained in *United States v. Garcia*, 406 F. Supp. 2d 304 (S.D.N.Y. 2005), while recognizing that a court should not preclude a defendant's review of 3500 material in a jail setting as a matter of course in all settings:

There will be cases, however, in which a casual attitude toward the handling of 3500 material is ill-advised.  Any lawyer with experience in the criminal justice system knows that copies of witness statements or other discovery material are often passed from hand to hand within the prisons.  In particular, the wide dissemination of statements by cooperating witnesses who are regarded as "snitches" or "rats" by their criminal associates, and who often must serve their own sentences in close proximity to other prisoners, poses obvious dangers.  It is not enough to say, as the defendants argue in this case, that the damage is done by the mere disclosure that a witness has cooperated with the authorities.  Hard evidence of the witness's betrayal can facilitate retaliation or intimidation of the witness.  It is therefore appropriate, in a case where such retaliation may be feared, to restrict the circulation of such material.

Defendants argue that such restrictions should only be imposed on a showing of actual threats to Government witnesses by the defendants.  But such evidence will not often be obtained, and by the time intimidation or retaliation against witnesses has occurred, the damage has been done.

*Id*. at 306.

Defendant himself recognized the need to treat civilian witness material differently, when proposing in his motion papers exactly what the Government is insisting upon here— that he review 3500 material from non-law enforcement witnesses in the presence of defense counsel and without the items being left at the jail.  (Dkt. 99 at 5).  Because of the nature of the alleged conduct (murder) and Defendant's criminal history (which not only apparently includes the incident referenced by the Government but also includes the two counts of conviction before this Court carrying a mandatory minimum sentence of 10 years in prison), restricting Defendant's ability to review the civilian witness material in a jail setting is appropriate.   The COVID-19 pandemic, while creating some additional challenges (as it has in almost every other aspect of life) does not mandate a different result.  To be clear, Defendant should be permitted to review the civilian witness material in the

presence of defense counsel at the jail setting, consistent with the terms of the protective order, or he can be transported to the United States Courthouse to review the material outside the presence of defense counsel but while in the custody of the United States Marshals Service.

Accordingly, the pending motions (Dkt. 91; Dkt. 93) are granted in part and denied in part consistent with this Decision and Order.  The Court will separately confirm with counsel the form of the proposed protective order in view of this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      June 9, 2020
            Rochester, New York